Do you wish to be represented for purposes of collective bargaining by –

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION 856, AFL-CIO

MARK AN "X" IN THE SQUARE OF YOUR CHOICE

YES    NO

DO NOT SIGN THIS BALLOT Fold and drop in ballot box.
If you spoil this ballot return it to the Board Agent for a new one.

Appendix 1

Edward J. ZAVORA, Plaintiff–Appellant,

v.

**PAUL REVERE LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 96–56045.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1997.

Decided June 11, 1998.

Eliot L. Bien, Bien & Summers, Novato, CA, for plaintiff-appellant.

Robert K. Renner, Barger & Wolen, San Francisco, CA, for defendant-appellee.

Before: CANBY and THOMPSON, Circuit Judges, and MOLLOY,[1] District Judge.

CANBY, Circuit Judge:

This appeal arises from a dispute between plaintiff Edward Zavora and his disability insurance provider, Paul Revere Life Insurance Co. Its resolution primarily depends on whether Paul Revere's disability insurance is an employee welfare benefit plan, as defined and regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461.

1. The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

## I

Zavora purchased disability insurance from Paul Revere through his employer, Decorative Carpet, Inc. Thereafter, he allegedly suffered an injury to his eye that disabled him. He submitted a claim to Paul Revere, which denied the claim. Zavora sued Paul Revere in state court, alleging breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, negligence and fraud.

Paul Revere removed the case to federal court, asserting both diversity of citizenship and federal question jurisdiction. Paul Revere contended that Zavora's claims, properly pleaded, amounted to an ERISA claim because the disability insurance was an "employee welfare benefit plan." See 29 U.S.C. § 1002(1). The district court agreed, and granted summary judgment dismissing Zavora's state-law claims as preempted by ERISA. See 29 U.S.C. § 1144(a). Zavora then amended his complaint to state an ERISA claim. The district court granted summary judgment in favor of Paul Revere on that claim, holding that Paul Revere did not abuse its discretion as an ERISA plan fiduciary in denying Zavora's claim.

The first issue for decision is whether Paul Revere's disability insurance is, as a matter of law, an "employee welfare benefit plan." The answer to that question turns on whether uncontroverted evidence establishes that Decorative Carpet's role with relation to the insurance program is sufficient to render it an ERISA plan. We conclude that Zavora has raised a triable issue of fact on that question, and we accordingly reverse the summary judgment holding that ERISA applies and preempts Zavora's state-law claims.

Because further proceedings possibly might lead to a conclusion that the insurance was an "employee welfare benefit plan," we also address the summary judgment upholding Paul Revere's denial of Zavora's claim under ERISA. We conclude that Paul Revere abused its discretion in denying his claim on the ground that his disability was due to a pre-existing condition and was of insufficient duration to trigger coverage. We therefore reverse the summary judgment on that issue, and remand for further proceedings in the event that trial of the first issue leads to a conclusion that ERISA applies.

## II

■ ERISA broadly preempts state law that relates to "any employee benefit plan" as described in the statute. 29 U.S.C. § 1144(a); see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Insofar as relevant to this case, an employee welfare benefit plan is a plan, fund or program "established or maintained by an employer" to provide benefits in the event of illness, disability or certain other conditions. 29 U.S.C. § 1002(1)(A).

■ "[T]he existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person." Credit Managers Ass'n v. Kennesaw Life & Acc. Ins. Co., 809 F.2d 617, 625 (9th Cir.1987) (emphasis added).[2] To aid in the determination, the Secretary of Labor has issued an interpretive regulation that creates for certain employer practices a "safe harbor" from ERISA coverage. In pertinent part, the regulation provides:

[T]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees ..., under which

(1) No contributions are made by an employer ...;

(2) Participation [in] the program is completely voluntary for employees ...;

(3) The sole functions of the employer ... with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees ..., to collect premiums through payroll deductions ... and to remit them to the insurer; and

(4) The employer ... receives no consideration in the form of cash or otherwise

---

2. The burden of establishing the existence of an ERISA plan is on Paul Revere. See Kanne v. Connecticut Gen. Life Ins. Co., 867 F.2d 489, 492 n. 4 (9th Cir.1988).

in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions....

29 C.F.R. § 2510.3–1(j).

There is no dispute between the parties that Decorative Carpet has satisfied subsections (1), (2) and (4) of the regulation. The program is voluntary for employees, and they pay the entire premium. Decorative Carpet receives no consideration for its services beyond the cost of administrative services. The bone of contention is subsection (3). Paul Revere contends that Decorative Carpet has endorsed the plan and exercised functions beyond collecting and remitting premiums. Zavora has submitted an affidavit of the responsible employee of Decorative Carpet, asserting that the company did no more than permit the insurer to publicize, and collect and remit premiums; the affidavit does not refer to endorsement.

The record indicates that Decorative Carpet applied for the insurance on a form supplied by Paul Revere, which recited certain ERISA requirements and stated that the applied-for coverage provided benefits under ERISA, "unless otherwise exempted by law." The application also included a box checked to indicate that Decorative Carpet requested Paul Revere to provide the plan summary along with the certificates of insurance. The plan summary, when produced, stated on its thirty-third page that it was a summary plan description under ERISA, and it showed Decorative Carpet as the plan administrator, plan sponsor, and agent for service of process. These facts alone, according to Paul Revere, establish Decorative Carpet's endorsement of the plan as a matter of law. Paul Revere's position draws support from *Kanne v. Connecticut General Life Insurance Co.*, 867 F.2d 489 (9th Cir.1988), where we held that an application referring to ERISA was evidence of intent to establish an ERISA plan, and that being administrator of a plan "endorses" it within the meaning of the regulation. *Id.* at 493.

In *Kanne*, however, we were dealing with a multiemployer trust that was set up for ERISA purposes, which had purchased the group health insurance in issue. Zavora argues that, unlike the ERISA trust in *Kanne*, Decorative Carpet was administrator in name only. It had nothing to do with the operation of the insurance "plan."

Paul Revere has the best of this argument, because endorsement may occur even if Decorative Carpet does not operate the plan. *Kanne* suggests that a plan administrator necessarily endorses a plan. *Id.* But this point is not determinative of the entire issue. The fact that Decorative Carpet does not fall within the "safe harbor" precludes a summary judgment *in Zavora's favor* based on the regulation alone. But the ultimate issue, which remains to be decided, is whether this plan is "established or maintained" by Decorative Carpet for its employees. *See Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir.1995). The fact that Decorative Carpet has failed in one particular to limit itself to the activities specified in a subsection of the "safe harbor" regulation is not conclusive; it is "'*evidence* of the establishment of a plan.'" *Crull v. Gem Ins. Co.*, 58 F.3d 1386, 1390 n. 2 (9th Cir.1995) (quoting *Silvera v. Mutual Life Ins. Co.*, 884 F.2d 423, 426 (9th. Cir.1989)) (emphasis added). That evidence must be considered along with "all the surrounding circumstances" to determine whether an ERISA plan exists. *Credit Managers*, 809 F.2d at 625.

Zavora has produced considerable evidence to support his contention that Decorative Carpet was a "plan administrator" in name only. The affidavit of Decorative Carpet's employee most familiar with the program asserted that Decorative Carpet engaged in no administrative activities beyond those specified in the "safe harbor" regulations or necessarily incident thereto: publicizing the plan, deducting and remitting premiums, and distributing certificates of insurance. The application for insurance reserved to Paul Revere the "full, final, binding and exclusive discretion to determine eligibility for benefits and to interpret the policy." The Plan Summary was prepared by Paul Revere, not Decorative Carpet, and its title page bore Paul Revere's name in large print (although it did list Decorative Carpet as the employer). That title page states: "This Benefit Sum-

mary replaces any and all information previously received on this Paul Revere benefit." Under "Miscellaneous Provisions," the Plan Summary states:

## THE EMPLOYER IS OUR AGENT FOR LIMITED PURPOSES

**Your employer is considered to be our agent only for these two events:**

**1. collecting premiums; and**

**2. giving out certificates of insurance.**

**No agent has the power to change or waive anything in the Group Policy.**

These provisions, along with Zavora's other evidence, could lead a reasonable person to find that Decorative Carpet served no function other than that of a conduit with regard to Paul Revere's insurance. The evidence as a whole permits, even it does not compel, a determination that Decorative Carpet did not establish or maintain an ERISA plan for disability insurance.

Paul Revere argues that the mere designation of Decorative Carpet as plan administrator imposes certain duties and fiduciary responsibilities upon Decorative Carpet, under ERISA. *See* 29 U.S.C. §§ 1002(16)(A)(i), 1002(21)(A); 29 C.F.R. § 2509.75–8, D–3. This argument presumes, however, that an ERISA plan has been established, which is the question in issue. If there is no ERISA plan, ERISA imposes no duties on an administrator. Paul Revere also argues that Decorative Carpet actively interpreted and applied the policy in determining which employees were eligible. Paul Revere does not cite the record in so arguing, but if the reference is to the fact that Decorative Carpet verifies full-time employment status to Paul Revere, it is clearly a ministerial function that is ancillary to other activities that create no ERISA plan under the safe harbor regulations. *See Johnson,* 63 F.3d at 1136 (employer's activities in maintaining list of enrollees, tracking eligibility status, and other ancillary activities were properly found within safe harbor).

We conclude, therefore, that Zavora has raised a triable issue of fact concerning the existence of an ERISA plan. We therefore reverse the summary judgment holding that an ERISA plan exists and preempts Zavora's state-law claims.

## III

■ Because the possibility remains that, on remand, an ERISA plan will be found to exist, we address the summary judgment upholding Paul Revere's exercise of discretion in denying Zavora's claim. We conclude that, on the evidence before Paul Revere when it denied Zavora's claim, the denial was an abuse of discretion. We therefore reverse the summary judgment in Paul Revere's favor on the ERISA claim.

Paul Revere's policy reserved for itself the discretion to determine eligibility for benefits. If ERISA applies, that reservation normally subjects Paul Revere to review only for abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Zavora argues, however, that we should review the denial of benefits de novo, rather than for abuse of discretion, because Paul Revere is in a position of obvious conflict of interest in determining his eligibility for benefits. *See id.* at 115, 109 S.Ct. 948. Zavora did not raise this conflict in the district court, however, and therefore offered no "material, probative evidence, beyond the mere fact of the apparent conflict," tending to show that Paul Revere breached its fiduciary duty because of self-interest. *See Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1323 (9th Cir.1995). In the absence of such a showing, we review for abuse of discretion. *Id.; Snow v. Standard Ins. Co.,* 87 F.3d 327, 331 (9th Cir.1996).

By the time of its final decision denying Zavora's claim, Paul Revere had before it two letters from Dr. David Fett, the ophthalmologist who treated Zavora for his thorn injury. One of the letters memorialized a telephone conversation with a claims employee of Paul Revere. The letters stated that Zavora's disability resulted from the thorn becoming buried in the back of his eye after the effective date of the insurance. The report of Dr. Fett's operation on Zavora was also included. Dr. Fett stated that the disability would not have occurred but for the thorn injury, which was the cause of the disabling pain. Paul Revere referred the file to its medical personnel, none of whom the

record shows to have been an ophthalmologist. *See Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 538 (9th Cir.1990). Without conferring with Dr. Fett or examining Zavora, *see id.*, they concluded that Zavora's disability was caused by his pre-existing dry-eye problem, for which he was still obtaining treatment. That condition had never been disabling before Zavora's thorn injury. Paul Revere therefore denied Zavora's claim, on the grounds that his disability was caused by his pre-existing condition and that the thorn injury would not have caused a period of disability sufficiently long to trigger coverage.

Although we recognize that an ERISA administrator is entitled to substantial deference, it still must have some reasonable basis for its decision denying benefits. This record is insufficient to support the discretionary denial of Zavora's claim. *See id.*, (inadequate investigation and reliance on non-experts in field failed to provide reasonable basis for ERISA administrator's determination that autism was excludable mental illness). Although Paul Revere acknowledged the reports of Dr. Fett, they rejected their conclusions without a sufficient evidentiary basis for doing so. The denial was an abuse of discretion. We therefore reverse the summary judgment upholding the denial of Zavora's ERISA claim, and remand for further proceedings in the event that the district court finds an ERISA plan to exist.[3]

### IV

The summary judgment of the district court holding that an ERISA plan exists and preempts Zavora's state law claims is reversed and remanded for further proceedings. The summary judgment in favor of Paul Revere on Zavora's ERISA claim is reversed, and the matter is remanded for further proceedings in the event that the district court finds an ERISA plan to exist.

**REVERSED AND REMANDED.**

---

**3.** We decline to direct reassignment of this case to a different judge on remand. Having reviewed the record in light of the factors set forth in *United States v. Jacobs*, 855 F.2d 652, 656 (9th Cir.1988), we discern no reason to reassign.