Susan MAGEE Plaintiff,

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA,** Defendant.

No. CIV.A.H–02–3660.

United States District Court, S.D. Texas, Houston Division.

April 22, 2003.

Glenn W Patterson, Jr, Attorney at Law, Houston, for Susan Magee, plaintiff.

Candice E Sayre, Shannon Martin et al, Houston, for Life Insurance Company of North America, defendant.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

This case involves the denial of long-term disability benefits. The case is before the Court on Defendant Life Insurance Company of North America's Motion for Summary Judgment ("LINA's Motion") [Doc. # 9]. Plaintiff Susan Magee has responded,[1] LINA has replied,[2] and Magee has filed a Surreply.[3] Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that LINA's Motion should be granted.

### I. UNDISPUTED FACTS

Magee worked for Southdown, Inc. ("Southdown"), now known as Cemex, as an executive secretary. Southdown purchased a long-term disability group policy (the "Plan") from LINA for its employees. Magee was insured under the Plan.

Details of the Plan are described in the Summary Plan Description ("SPD") distributed to employees of Southdown. Magee disputes the authenticity of the SPD cover page submitted by LINA, which contains the Southdown logo at the bottom center. *See* Exhibit A2 to LINA's Motion, at CIGNA 00025.[4] There is no dispute about the rest of the SPD.[5] The SPD "Forward" says:

> The need for disability insurance protection depends on individual circumstances and financial situations. Your employer is offering you the opportunity to purchase this insurance to make your benefit program more comprehensive and responsive to your needs.

Exhibit A2 to LINA's Motion, at CIGNA 00027.

The final two pages of the SPD are titled "SUPPLEMENTAL INFORMATION for Southdown, Inc. Voluntary Employee Benefit Association Long Term Disability Plan required by the Employee Retirement Income Security Act of 1974." The Supplemental Information provides "Important Information about the Plan" and summarizes participants' "Rights as Set Forth under ERISA." *Id.* at 16. The Supplemental Information tells participants that the Plan is established and maintained by Southdown, and Southdown is the Plan Administrator. As Plan Administrator, Southdown "has authority to

---

1. Plaintiff's Response to LINA's Motion ("Magee's Response") [Doc. # 11].

2. LINA's Reply to Plaintiff's Response[Doc. # 12].

3. Plaintiff's Reply [sic] to LINA's Motion ("Magee's Surreply") [Doc. # 13].

4. LINA has submitted the Affidavit of its custodian of records, Richard Lodi, to authenticate the cover page. Exhibit A to LINA's Motion. Plaintiff Magee testifies that the cover page attached to the SPD given to her does not have Southdown's name on it. Affidavit of Susan Magee (Exhibit 1 to Magee's Response), ¶ 5.

5. *Compare* Exhibit A2 to LINA's Motion *with* Exhibit 3 to Magee's Response.

control and manage the operation and administration of the Plan. Under the Plan Administrator may terminate, suspend, withdraw, or amend the Plan, in whole or in part, at any time ..." Southdown is the agent for service of legal process. Southdown, as Plan Administrator, also is required to allow participants to examine, without charge, all Plan documents and to provide copies, at a reasonable charge, to participants. The Supplement further instructs participants to request claim forms or obtain claim instructions from the Plan Administrator. *Id.*

The SPD makes clear that claims under the Plan are handled by the insurance company. *Id.* at 3 (stating "You must provide to [the Insurance Company], at your own expense, satisfactory proof of Disability before benefits will be paid."); *Id.* at 16 (stating "You must complete your claim according to directions provided by the Insurance Company" and "The Insurance Company has 90 days from the date it receives your notice of claim to determine whether or not benefits are payable").

Magee stopped working for Southdown in February 2001 after she was diagnosed with fibromyalgia and chronic pain syndrome. She filed a claim for long-term disability benefits at about that time. LINA denied Magee's claim in February 2002 because they found that the medical documentation submitted did not support her contention that she was unable to perform her daily work tasks on a full time level. Magee filed suit in the 190th District Court of Harris County, Texas, asserting state law claims against LINA. LINA removed the case to this Court based on federal question jurisdiction, alleging Magee's state law claims were preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and on diversity jurisdiction.

LINA now moves for summary judgment that Magee's state law claims are preempted in their entirety by ERISA, and that LINA did not abuse its discretion in denying Magee benefits. Magee counters that the Plan is not governed by ERISA because it meets the requirements of the safe harbor established by the Department of Labor. Magee does not address LINA's arguments regarding preemption or abuse of discretion.

## II. *SUMMARY JUDGMENT STANDARDS*

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir.2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002). An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding whether a fact issue

has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir.2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Smith v. Brenoettsy,* 158 F.3d 908, 911 (5th Cir.1998). The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Id.* If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.,* 268 F.3d 275, 282 (5th Cir.2001) (quoting *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* (quoting *Smith v. Brenoettsy,* 158 F.3d 908, 911 (5th Cir. 1998)); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District,* 308 F.3d 451, 458 (5th Cir.2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir.1998). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Id.* Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995), *revised on other grounds upon denial of reh'g,* 70 F.3d 26 (5th Cir.1995); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

## III. *ANALYSIS*

### A. *Is the Plan an ERISA Plan?*

To determine whether a particular plan qualifies as an ERISA plan, the Fifth Circuit asks whether the plan "(1) exists; (2) falls with the safe harbor exclusion established by the Department of Labor; and (3) meets the ERISA requirement of establishment or maintenance by an employer for the purpose of benefitting the plan participants." *McNeil v. Time Ins. Co.,* 205 F.3d 179, 189 (5th Cir.2000); *Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir.1993); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 976–78 (5th Cir.1991).

A plan is said to exist if a court can determine "from the surrounding circumstances [that] a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Meredith,* 980 F.2d at 355. There is no dispute here that the Plan exists.

There is also no dispute that the Plan meets the third element above, which requires that the benefit plan be established or maintained by an employer and be intended by the employer to provide benefits to its employees.[6] *See Meredith,* 980 F.2d at 355.

6. Magee says "Southdown acquired a long-term disability plan for their employees ...."

■ The issue in this case is whether the Southdown Plan meets all of the requirements of the safe harbor provision established by the Department of Labor. The safe harbor provision excludes a plan from ERISA coverage if "(1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer, *and* (4) the employer received no profit from the plan." *Id.* (emphasis in original). The plan must meet all four criteria established by the Department of Labor to be exempt. *Id.*; 29 C.F.R. §§ 2510.3–1(j)(1)–(4).

LINA agrees that the first, second and fourth criteria of the safe harbor provision have been met: (1) Southdown made no contributions to the plan, (2) participation was voluntary and, (4) Southdown received no profit from the plan. LINA's Motion, ¶ 9. LINA contends the Plan does not meet the third safe harbor criterion, which asks whether:

> [t]he *sole* functions of the employer or employee organization with respect to the program are, *without endorsing the program,* to permit the *insurer* to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer.

29 C.F.R. § 2510.3(j)(3) (emphasis added).

Magee asserts that the only activities Southdown performed in connection with her claim were informing her that LINA handled all claim matters and making one unsuccessful phone call to LINA on her behalf after the claim was denied. Magee contends that Southdown did nothing to assist in filing her claim, but told her it would forward a brochure from LINA explaining how to proceed in filing a claim. Exhibit 1 to Magee's Response, ¶¶ 3–4. Thus, Magee argues that a fact issue exists

Exhibit 1 to Magee's Response, ¶ 2.

as to whether Southdown performed administrative functions or endorsed the program, and LINA is not entitled to summary judgment.

LINA argues that the Plan designated Southdown as Plan Administrator and the SPD clearly indicates that Southdown endorsed the program. Therefore, LINA contends the Plan does not meet the requirements of the safe harbor provision. The Court concludes that LINA has the better of these arguments and that Magee has not raised a genuine question of fact on the safe harbor provision.

In *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 977 (5th Cir.1991), the Fifth Circuit addressed the element of whether "the employer's functions with respect to the program [are] limited solely to permitting the insurer to publicize the program to its employees, collecting premiums, and remitting them to the insurer." The essence of the inquiry is the employer's "involvement in program." *Id.* The *Hansen* Court found that the employer endorsed the plan by distributing a booklet that had language encouraging employees to "give the program careful consideration" as it could be "a valuable supplement to your existing coverages." *Id.* The booklet was entitled "Group Accident Insurance Plan for the employees of Fairfield Industries," bore the employer's corporate logo, and referred to the policy as *"our plan of Group Accident Insurance" Id.* at 974. (emphasis in original). Further, the employer paid a full-time employee to serve as the benefits administrator. The Fifth Circuit held that the employer's endorsement and administrative activity exceeded the limitations of the third element of the safe harbor provision, and therefore the plan was not excluded from ERISA's scope. *Id.*

The First Circuit, in *Johnson v. Watts Regulator Co.*, 63 F.3d 1129 (1st Cir.1995), addressed whether an employer endorsed a benefit plan. In *Johnson*, the employer distributed with the plan brochure a letter on company letterhead containing the following language: "Your company makes available to you a program of Group Accident Insurance . . . ." *Id.* at 1135. Nothing in the letter or the brochure indicated that Watts had any control over or proprietary interest in the program, or mentioned ERISA. *Id.* Even though Watts had a benefits administrator, the court found Watts's performance of tasks such as collecting premiums through payroll deductions, remitting premiums, issuing certificates to employees confirming enrollment, maintaining a list of insured persons, assisting the insurer in securing documentation, making various forms available to employees, and keeping track of eligibility and status of claims did not rise to the level of an endorsement. *Id.* at 1136. *Johnson* stands for the premise that endorsement requires evidence that employer neutrality has been compromised. *Id.* at 1136.

The Sixth Circuit followed the reasoning of *Johnson* in *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 436–37 (6th Cir.1996). *Thompson* holds that endorsement is evaluated based on the "employer's involvement in the creation or administration of the policy from the employee's point of view." *Id.* at 437. The *Thompson* court found that an employee could reasonably conclude that an employer "had compromised its neutrality in offering the plan" if the SPD specifically refers to ERISA. *Id.* Because the policy documentation at issue in *Thompson* did not mention that the policy was subject to ERISA, nor was it clear from the record whether the employer acted as administrator, devised terms of the policy, determined eligibility and coverage, or processed claims, the Sixth Circuit found

that questions of material fact precluded summary judgment and remanded the case for further proceedings. *Id.* See also *Nicholas v. Standard Ins. Co.*, 48 Fed.Appx. 557, 2002 WL 31269690, *6 (6th Cir.2002) (holding that when an employer determines which employees will be eligible for coverage, negotiates the terms or benefits of the policy, is named as plan administrator, and provides a summary plan description describing the plan as an ERISA plan, the plan is governed by ERISA).

The Ninth Circuit tackled the endorsement issue in *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1121 (9th Cir. 1998). In *Zavora*, as here, the employer was designated as plan administrator and the SPD stated the policy was subject to ERISA. The plaintiff submitted an affidavit from the employer asserting that the employer did nothing more than permit the insurer to publicize and collect and remit premiums. *Id.* Paul Revere prepared the SPD and its name appeared on the cover in bold print, although the employer's name also was on the cover. The title page referred to "this Paul Revere benefit." *Id.* However, the SPD indicated the employer is the insurance company's agent only for the limited purposes of collecting premiums and giving out certificates of insurance and further stated "[n]o agent has the power to change or waive anything in the group policy." *Id.* at 1122. Under those circumstances, the court found that a reasonable person could find that the employer served no other function than a "conduit with regard to Paul Revere's insurance." *Id.*

Applying the guidelines established by these, and in particular by *Hansen*, the Court concludes that the Plan is governed by ERISA. Although the SPD Forward here does not use the exact phrase "our plan," those are not magic words of en-

dorsement. The language "[y]our employer is offering you the opportunity to purchase this insurance to make your benefit program more comprehensive and responsive to your needs" is at least as strong an endorsement as the language "[t]h[is] booklet explains our plan of Group Accident Insurance designed to help provide financial security ..." at issue in *Hansen*. Magee's argument that the above-quoted language was merely LINA's endorsement of the Plan is not a persuasive distinction.[7] The statement conveys the meaning that the *employer* believes that the Plan makes its employees' benefit program more comprehensive and responsive. The expression of that belief is an endorsement.

In addition, Magee's statement that the SPD does not use Southdown's name is inaccurate. The Plan contains a Supplemental Information section informing Magee that "[a]s a Plan participant in Southdown, Inc.'s Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA)," and stating "[t]he Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA." Exhibit 3 to Magee's Response, at 15. The following paragraph concludes the Supplemental Information:

> While ERISA requirements are established by federal law and regulation, Southdown, Inc. has always attempted

to provide its employees with welfare benefit plans that meet the same high standards imposed by the law. We are pleased that the law will enable better application of these standards.

Exhibit 2 to LINA's Motion, at 17.[8] Thus, the SPD both identifies the Plan as Southdown's, and informs participants that the Plan is subject to ERISA.

Moreover, the Plan does not meet the safe harbor provision because Southdown's functions were not limited to allowing LINA to publicize the Plan and collecting and remitting premiums. It is true that Southdown did not handle Magee's claim. However, unlike the employer in *Zavora*, Southdown was granted authority as Plan Administrator "to control and manage the operation and administration of the Plan" and to "terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time." Thus, a reasonable fact-finder would conclude that Southdown was more than a mere conduit for LINA's insurance. *See Zavora*, 145 F.3d at 1122.

In light of the uncontradicted evidence that Southdown endorsed the Plan and was authorized to perform functions other than merely collecting and remitting premiums, it is not determinative that Southdown did not employ a full-time benefits administrator and did not administer Magee's claim. Although in *Hansen* the existence of a full-time benefits administrator was a factor in determining that the plan

---

7. The presence of the corporate logo on the booklet in *Hansen* was significant in that it allowed the court to interpret the pronoun "our" in the phrase "our plan" as including the employer. The Court notes that the booklet in *Hansen* was prepared by the insurance company, arguably making use of the phrase "our plan" a less clear expression of the employer's endorsement than the phrase "your employer is offering ...." *See* 940 F.2d at 974 n. 2. Due to the parties' dispute over the authenticity of the cover sheet on the SPD, the Court does not rely on the existence of a

cover sheet bearing the Southdown name in reaching its conclusion.

8. Page 17 is not attached to the copy of the SPD submitted by Magee. *See* Exhibit 3 to Magee's Response. Page 16 ends in an incomplete sentence making it clear there is another page. Magee has not disputed the authenticity of page 17, and it is attested to by LINA's custodian of records. Affidavit of Richard Lodi (Exhibit A to LINA's Motion), ¶ 3.

in that case did not meet the requirements of the safe harbor provision, nothing in *Hansen* makes the existence of a full-time benefits administrator a requirement for finding a plan to be an ERISA plan.

The safe harbor provision covers plans offered by employers who take a totally neutral position towards the plan. That is not the case here. The Court concludes that the Plan does not meet the requirements of the safe harbor provision, and thus the Plan is an ERISA Plan.

## B. *Preemption*

 Congress may so completely preempt a particular field that any complaint raising claims in that field is necessarily federal in nature. *Rivet*, 522 U.S. at 475, 118 S.Ct. 921 ("[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law."); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In cases in which state law claims are related to an ERISA plan, courts have held that such claims are completely preempted by ERISA. *Hogan v. Kraft Foods*, 969 F.2d 142, 144–45 (5th Cir.1992). ERISA preempts "any and all State laws insofar as they now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has held that the term "relate to" should be expansively construed. *FMC Corp. v. Holliday*, 498 U.S. 52, 57, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) ("The preemption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA.").

 However, some state law claims may affect an ERISA plan in a manner that is too tenuous, remote, or peripheral to warrant a finding that the law "relates to" the plan. *Nickel v. Estate of Estes*, 122 F.3d 294, 297 (5th Cir.1997). For example, in certain circumstances a plaintiff may refer to plan benefits as a measure of damages without invoking ERISA preemption. *Rozzell v. Security Serv., Inc.*, 38 F.3d 819, 822 (5th Cir.1994). Thus, in order to determine whether a claim arises under federal law, the Court must look past words in the complaint and consider the substance of the claim alleged. *Id.* The Fifth Circuit takes a fact-sensitive approach when making a preemption determination. *E.g., Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 246 (5th Cir.1990) (examining the "commercial realities" of plaintiff's position as part of ERISA preemption analysis).

Applying these principles, the Fifth Circuit has found generally that ERISA preempts state law claims in two situations: when "(1) the claim addresses areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and [when] (2) the claim directly affects the relationship among the traditional ERISA entities— *i.e.*, the employer, plan administrators, fiduciaries, participants, and beneficiaries." *Bullock v. The Equitable Life Assurance Society*, 259 F.3d 395, 399 (5th Cir.2001); *Cypress Fairbanks Med. Ctr., Inc. v. Pan–American Life Ins. Co.*, 110 F.3d 280, 283 (5th Cir.1997); *Memorial*, 904 F.2d at 245.

 Magee's state claw claims are completely preempted. The relief Magee requests is fundamentally for payment of long-term disability benefits under the Plan. This claim is clearly "related to" an ERISA plan. Magee's exclusive remedy to recover benefits is 29 U.S.C. § 1132(a). *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Memorial Hosp. Sys. v. Northbrook Life Ins.*, 904 F.2d 236, 250 (5th

Cir.1990). Magee does not address preemption in her summary judgment response or surreply briefs.[9] She thus concedes that if the Plan is an ERISA plan, her state law claims are preempted.[10]

## C. *Did LINA Abuse its Discretion in Denying Magee Benefits?*

Magee has not pled a claim under ERISA. However, as noted above, the allegations of state law violations contained in Magee's Original Petition establish that her claim is one for wrongful denial of benefits that is governed by the civil enforcement provisions in § 502(a) of ERISA, 29 U.S.C. § 1132(a). Thus, the Court next considers whether Magee has stated a genuine issue of fact with respect to such an ERISA claim.

 The United States Supreme Court has held that the denial of benefits under an ERISA plan is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Lain v. UNUM Life Ins. Co. of America,* 279 F.3d 337, 342 (5th Cir.2002). If the plan grants to the administrator such discretionary authority, the reviewing court applies an "abuse of discretion" standard. *Meditrust Financial Services Corp. v. The Sterling Chemicals, Inc.,* 168 F.3d 211, 213 (5th Cir.1999).

 "In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously." *Id.* at 214 (internal quotations and citations omitted). "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence. A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 215 (internal quotations and citations omitted); *Lain,* 279 F.3d at 342. The administrator abuses its discretion if its decision is not supported by substantial evidence in the administrative record and is erroneous as a matter of law. *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 646 n. 12 (5th Cir.1992); *see also Vega v. National Life Insurance Services,* Inc., 188 F.3d 287, 302 (5th Cir. 1999) ("Without some concrete evidence in the administrative record that supports the denial of the claim, we must find the administrator abused its discretion.").

 The Fifth Circuit applies a "sliding scale" approach to benefits denials made by an administrator that is also the insurer. *Vega v. National Life Ins. Serv., Inc.,* 188 F.3d 287, 297 (5th Cir.1999). Under this approach, the existence of a conflict is a factor to be considered in determining whether the insurer abused its discretion in denying a claim. *Id.* "The greater the evidence of conflict on the part of the administrator, the less deferential

---

**9.** Magee did not address preemption, or whether LINA abused its discretion, in her Surreply, even after LINA pointed out in its Reply that it considered Magee's failure to address those issues to be a waiver.

**10.** The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a

waiver on appeal. *Lookingbill v. Cockrell,* 293 F.3d 256, 264 (5th Cir.2002) (citing *Dowthitt v. Johnson,* 230 F.3d 733, 747 n. 16 (5th Cir.2000), *cert. denied,* 532 U.S. 915, 121 S.Ct. 1250, 149 L.Ed.2d 156 (2001); *Johnson v. Puckett,* 176 F.3d 809, 814 (5th Cir.1999)). By analogy, failure to brief an argument in the district court waives that argument in that court.

out abuse of discretion standard will be." *Id.*

■ LINA contends that the Plan granted it discretion to determine eligibility for benefits by providing in the Description of Benefits that a claimant must provide, at his or her own expense, "*satisfactory* proof of Disability before benefits will be paid." SPD, Exhibit 3 to Magee's Response, at 3 (emphasis added); Policy, Exhibit A1 to LINA's Motion, at 10 (emphasis added). The Fifth Circuit has not required use of specific language to invoke discretion. *Wildbur,* 974 F.2d at 636–37. Ineed, Magee has not presented any evidence or argument that LINA lacked discretion under the Plan to make benefits determinations. The Court agrees that the "satisfactory proof" language quoted above grants LINA discretion to determine eligibility for benefits. *See Jarrell v. Reliance Std. Life Ins. Co.,* 1996 WL 735561 * 5 (N.D.Tex. Dec.13, 1996); *Yeager v. Reliance Std. Life Ins. Co.,* 88 F.3d 376, 381 (6th Cir.1996) (a determination that evidence is satisfactory requires an exercise of discretion). However, because LINA serves as the insurer as well as the claim administrator charged with determining eligibility, LINA is under a conflict of interest. Therefore, the Court will afford LINA's decision less deference than would otherwise apply.

■ LINA denied Magee's claim because "the medical evidence does not support an inability to perform a sedentary occupation." Exhibit 5 to LINA's Motion, at 4. Magee's Original Petition indicates that she challenges LINA's factual finding that her proof is not satisfactory to show that she is "Disabled" under the Plan. Exhibit 11 to LINA's Motion, ¶¶ 11–12. Magee does not address LINA's purported abuse of discretion in response to LINA's Motion.

LINA based its initial decision to deny benefits in September 2001 on the following materials:

1. a Disability Questionnaire in which Magee indicated she was unable to perform her job duties due to pain, extreme fatigue, memory loss and difficulty concentrating, but was able to care for her personal needs, including food shopping and laundry;

2. office notes from Dr. Victor Lavis for the period 4/25/01 through 6/27/01. Dr. Lavis treated Magee for hypercalcemia, and noted symptoms of low energy, muscle aches and pain, and some hair loss. Dr. Lavis's notes did not contain a Physical Abilities Assessment or provide work restrictions;

3. office notes from Dr. Friedman's office for the period 3/15/01 through 4/19/01. The notes reflect that Magee reported that in November 2000 she experienced sudden onset of pain and swelling in her legs, and later had similar pain in her shoulders, extending to her fingers. On 4/19/01 Dr. Shane in Dr. Friedman's office concluded that Magee had fibromyalgia and prescribed medication;

4. a July 2001 Physical Ability Assessment ("PAA") prepared by Dr. P. Shane, a rheumatologist, which found Magee capable of doing all of the following occasionally [11] in an eight-hour work day: lifting or carrying 10 lbs., standing, walking, climbing regular stairs, stooping, kneeling, crouching, and reaching.

**11.** "Occasionally" is defined in the assessment as 1–33% of the day, or less than 2.5 hours.

750

Dr. Shane found Magee capable of continuous fine manipulation and a simple and firm grasp, and of frequent sitting.[12] Dr. Shane concluded Magee was not able to work extended shifts;

5. office notes from Dr. Grover, a pain management specialist, covering 5/1/01 through 6/14/01, which include reference to the November 2000 pain mentioned above. The 6/14/01 note indicates that medication is controlling Magee's pain and allowing her to function; and

6. an unsigned, undated Physical Abilities Assessment from Dr. Grover's office containing ambiguous findings regarding Magee's abilities, and concluding that Magee is not capable of even sedentary work.

*See* Exhibit A5 to LINA's Motion.

Dr. Thomas Franz performed a Physician Case Review of Magee's claim. Dr. Franz concluded that Dr. Shane's PAA is more consistent with both the medical documentation and the expectation of the condition fibromyalgia than that from Dr. Grover. Exhibit A8 to LINA's Motion, at 3. Before issuing its decision, LINA asked Dr. Grover to provide more information to reconcile his PAA with Dr. Shane's. LINA asked Dr. Grover to give his opinion as to whether Magee was capable of performing sedentary work and, if she was not, to provide an explanation. Dr. Grover did not respond to the questions asked by LINA. Exhibit A5 to LINA's Motion, at 3. In its September 19, 2001 letter denying Magee's claim, LINA informed Magee of her right to appeal and informed her of the need to submit medical documentation, including test results, to support her disability claim. *Id.* at 4.

Magee submitted additional materials on appeal. Magee submitted a letter from Dr. Grover stating that she is permanently disabled because of fibromyalgia and cannot perform a sedentary job on a full-time basis. Magee submitted an affidavit from a co-worker stating that Magee complained of pain at work and looked to be in obvious pain consistently. Magee submitted an additional letter from Dr. Shane, who stated that Magee had a limited measure of relief from medication, but her condition "may limit her employment capabilities even on a sedentary capacity." Magee also submitted a letter from Dr. Diaz, who stated his opinion that Magee suffers from small fiber peripheral neuropathy in addition to fibromyalgia. He notes that other causes of Magee's symptoms have been ruled out. Dr. Diaz stated that Magee was currently disabled, but may in the future recover to the point of being able to return to work. *See* Exhibit A6 to LINA's Motion, at 3–4.

LINA asked Dr. Farrukh Hamid, a physician board certified in physical medicine and rehabilitation to conduct a peer review of Magee's file, including the information submitted after appeal. Dr. Hamid spoke with Dr. Grover, who reaffirmed his opinion that Magee's symptoms were consistent with fibromyalgia, but recognized that no formal neuro-physchological testing had been done to support claims of cognitive defects. Exhibit A4 to LINA's Motion, at 1. Dr. Grover agreed that further testing would be reasonable. *Id.* Dr. Hamid concluded that "without formal functional capacity testing, neuropsych testing and comprehensive report from at least one physician who would clearly indicate that all treatable causes for the given symptoms here have been ruled out (Lyme's,

12. "Continuous" is defined as 67–100%, or 5.5 hours or more, and "frequent" is defined as 34–66%, or 2.5 to 5.5 hours.

depression, hypothyroidism, etc.) there is not objective documentation in the records to support the disability claim for any duration." *Id.*

Based on all of the evidence before it, including the report of Dr. Hamid's independent peer review, Dr. Shane's failure to state a firm opinion as to Magee's inability to perform sedentary work and Dr. Shane's PAA that supports a finding that Magee is able to do sedentary work, LINA again denied Magee's benefit claim.

This evidence in the administrative record [13] is sufficient to establish that LINA did not abuse its discretion in denying Magee's claim for long-term benefits.

## IV. *CONCLUSION AND ORDER*

The Southdown Disability Plan is covered by ERISA and does not meet the requirements of the safe harbor provision established by the Department of Labor. Accordingly, Magee's state law claims are completely preempted by federal law. Magee has failed to create a genuine issue of material fact as to LINA's abuse of discretion in denying Magee benefits. It is therefore

**ORDERED** that LINA's Motion for Summary Judgment [Doc. # 9] is **GRANTED**. It is further

**ORDERED** that Plaintiff Susan Magee's claims against LINA are **DISMISSED**.

The Court will issue a separate final judgment.

---

13. As previously noted, Magee did not submit any evidence in support of her opposition to LINA's Motion on the merits of her disability claim.