Regan L. METOYER Plaintiff,

v.

AMERICAN INTERNATIONAL LIFE
ASSURANCE COMPANY OF
NEW YORK Defendant.

No. CIV.A. G–03–473.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 16, 2003.

Gordon E Davenport, Jr, Davenport Law Firm, Alvin, TX, for Regan L Metoyer, plaintiff.

Thomas C Wright, The Wright Law Firm, Dana T Blackmore, Attorney at Law, Houston, TX, for American National Life Assurance Company of New York, defendant.

### ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

KENT, District Judge.

This suit to recover benefits under a group accident insurance policy comes before the Court on removal from the 239th Judicial District Court of Brazoria County, Texas. For the reasons stated below, the Court hereby REMANDS the case to the Texas Court.

### I.

On September 19, 1999, Gregory Alan Metoyer played tackle football with a group of friends. After he returned home, he began to feel ill. He was later admitted to the emergency room at Columbia Clear Lake Regional Medical Center complaining of severe abdominal pains. He died in the hospital on September 24, 1999. The autopsy and subsequent investigation concluded that Mr. Metoyer likely suffered a severe blow to the abdomen while playing football. The blow ruptured the intestinal wall, causing fecal matter to leak into the abdominal cavity and eventually resulting in his death from fibrinopurulent peritonitis.

Mr. Metoyer was insured by Defendant American International Life Assurance Company of New York ("Defendant" or "AIG") under policy PAI 8039583 ("the Policy"), a group accident insurance policy. Plaintiff Regan A. Metoyer ("Plaintiff"), the widow of Gregory Alan Metoyer, is the designated beneficiary under the Policy. After discovering the Policy, Plaintiff filed a claim for benefits. Plaintiff alleges that Defendant has refused and continues to refuse to pay benefits under the Policy despite repeated demands.

Plaintiff filed suit against Defendant in the 239th Judicial District Court of Brazoria County, Texas, on June 13, 2003. Plaintiff's Original Petition asserts claims for payment of $300,000 under the Policy, additional damages of 18% per annum on the policy amount claimed under Texas Insurance Code article 21.55, and attorneys' fees. On June 30, 2003, Defendant filed its timely Notice of Removal in this Court, alleging federal subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1441(b), as well as supplemental jurisdiction under 28 U.S.C. § 1367. On July 25, 2003, Defendant filed its Motion to Dismiss for Failure to Exhaust Administrative Remedies and Rule 12(b)(6) Motion to Dismiss. Plaintiff timely responded on August 1, 2003, but on the same day filed her Motion to Remand, in which she contests the asserted basis of federal jurisdiction. Because this Court cannot exercise power over a controversy without valid subject-matter jurisdiction, Plaintiff's Mo-

tion to Remand must be addressed before the Court can proceed.

## II.

■ Absent an express provision to the contrary, a defendant may remove a state-court action to federal court only if the suit could have been filed originally in federal court. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Defendant alleges, in its Notice of Removal, that this case comes within this Court's federal question jurisdiction. Congress has provided the federal courts with jurisdiction over "all civil actions arising under the Constitution, laws, and treaties of the United States." 28 U.S.C. § 1331. Generally, the existence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429 (citing *Gully v. First Nat'l Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)). If the plaintiff's well-pleaded complaint does not show that federal law creates the plaintiff's right of action, federal question jurisdiction may exist if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983). This exception to the well-pleaded complaint rule applies when Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Arana v. Ochsner Health Plan,* 338 F.3d 433, 437 (5th Cir.2003), *cert. pending,* No. 03–542 (quoting *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)).

■ In considering the Parties' representations regarding the status of the Policy relative to ERISA, the Court is mindful that the party seeking removal bears the burden of proving that the Court has subject matter jurisdiction, *see, e.g., Manguno v. Prudential Property & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir.2002), and that "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root,* 200 F.3d 335, 339 (5th Cir.2000). Because removal is premised on ERISA coverage, the Court concludes that Defendant bears the burden of establishing that the Policy qualifies as an ERISA plan. *Cf. Zavora v. Paul Revere Life Ins. Co.,* 145 F.3d 1118, 1120 n. 4 (9th Cir.1998) ("The burden of establishing the existence of an ERISA plan is on [the insurer].").

## III.

■ The Supreme Court has held that complete preemption applies to state-law claims within the scope of ERISA's civil enforcement provision. *See Metro. Life Ins. Co.,* 481 U.S. at 66, 107 S.Ct. at 1548 ("Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court."). ERISA's civil enforcement provision, § 502(a), provides, in relevant part:

(a) A civil action may be brought:

(1) by a participant or beneficiary

. . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B). The operative question on Plaintiff's Motion to Remand is therefore whether Plaintiff's claim falls within ERISA's civil enforcement provision. If so, Plaintiff's claim is completely

preempted and necessarily arises under federal law, thus providing this Court with valid subject-matter jurisdiction.

The answer to this question depends, however, on whether the Policy is an ERISA plan at all. Whether the Policy constitutes an ERISA plan is a question of fact. *McNeil v. Time Ins. Co.*, 205 F.3d 179, 189 (5th Cir.2000). To determine whether a particular plan is covered by ERISA, the Court must determine "whether the plan (1) exists; (2) falls within the safe harbor exclusion established by the Department of Labor; and (3) meets the ERISA requirement of establishment or maintenance by an employer for the purpose of benefitting the plan participants." *Id.* Plaintiff does not dispute that the Policy meets the first and third elements of the test, but she claims that the Policy falls within the safe harbor provision and therefore does not qualify as an ERISA plan.

The so-called safe harbor provision promulgated by the U.S. Department of Labor excludes a plan from ERISA if all of the following conditions are met: "(1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer received no profit from the plan." *Magee v. Life Ins. Co. of N. Am.*, 261 F.Supp.2d 738, 744 (S.D.Tex. 2003) (Atlas, J.) (quoting *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir.1993)); *see also* 29 C.F.R. 2510.3–1(j)(1)–(4). Plaintiff emphasizes that the Policy is denoted as "Voluntary" on the brochure provided to employees, as well as the fact that the Policy is identified as "Non–Participating." Plaintiff also submits the affidavit of Edward Webster, controller for Mr. Metoyer's employer, CIM Industrial Machin-

ery, Inc., a subsidiary of Itochu International, Inc. ("Itochu"). Mr. Webster states in his affidavit that the company's only role with regard to the Policy was to make its existence known to employees. Affidavit of Edward Webster ¶ 5.[1] Defendant does not dispute that the second and fourth prongs of the safe harbor provision apply; that is, that participation in the Policy was voluntary and Itochu received no profit from the Policy. Defendant claims, however, that the Policy does not satisfy either the first prong—that the employer does not contribute to the plan—or the third prong—that the employer's role is limited to collecting premiums and remitting them to the insurer. *See Meredith*, 980 F.2d at 355.

Defendant's arguments amount to variations on the same theme. Both depend on the premise that the Policy was a part of the larger package of benefits provided by Itochu to its employees and, as such, cannot be severed for purposes of ERISA analysis. Defendant cites this Court's decision in *Armstrong v. Columbia/HCA Healthcare Corp.*, in which the Court "decline[d] to hold that each element of a benefits package must be viewed as a microcosm." 122 F.Supp.2d 739, 743 (S.D.Tex.2000). The precise factual question thus presented is whether the Policy is merely a component of the total package of benefits provided to Itochu employees and subsidized by the company, or whether it is completely separated from the Itochu benefits package.

To the limited extent that Defendant provides relevant information about Itochu's involvement with Decedent's health benefits, it addresses Itochu's activities with respect to the entire package of health benefits that it offered its employees. This assumes a favorable answer to

---

**1.** Defendant disputes the probative value of Mr. Webster's affidavit, asserting that, as an employee of a subsidiary corporation, he can-

not provide meaningful evidence of the parent company's activities or position relative to the Policy.

the basic question of whether the Policy is severable. Defendant provides no support for its assertion that the Policy qualifies as an ERISA plan other than its contention that the Policy is somehow intertwined with the employee benefits provided by Itochu. Furthermore, Defendant provides no support for its claim that the Policy is so intertwined other than a citation to *Armstrong* embellished only by the assertion that "the factual circumstances in the *Armstrong* case are exactly similar to those in the case sub judice." Defendant's Response to Plaintiff's Motion to Remand and Reply to Plaintiff's Response to Defendant's Motion to Dismiss 1–2.

The dispute in *Armstrong* involved an optional spousal coverage provision that employees could purchase in addition to the employee's own life insurance, which the employer funded. This Court concluded, "Only by accepting this free insurance could Plaintiff choose to either increase her own coverage or insure the lives of her dependants." *Armstrong*, 122 F.Supp.2d at 743. The Court based its conclusion in *Armstrong* on the Eleventh Circuit's interpretation of ERISA in *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562 (11th Cir. 1994). In *Smith*, as in *Armstrong*, the Plaintiff attempted to sever an optional dependent-coverage provision from the remainder of her employee benefits, which were paid for by her employer. The *Smith* court concluded that "the dependent coverage was a feature of the Plan, notwithstanding the fact that the cost of such coverage had to be contributed by the employee." *Id.* at 567. The court explained:

> We see no indication at all that the regulation was intended to exempt from ERISA coverage the commonplace situation where dependent coverage is paid for by plan participants. The regulation applies only to programs where no contributions are made by an employer; yet under the Plan the defendant contribut-

ed all of the premium except for the dependent coverage contribution. The employer must not subsidize the purchase of insurance for this safe harbor provision to apply.

*Id.* at 568. *Smith* and *Armstrong* thus draw on the distinction between an optional coverage provision that is a feature of an ERISA plan and coverage that arises under a policy distinct from an existing ERISA plan.

Plaintiff does not dispute Defendant's representation that "Itochu International provided employee medical benefits, life insurance benefits underwritten by Nippon Life Insurance Company of America, and other employee benefits in which Itochu International paid premiums." Defendant's Response at 2. Defendant also acknowledges that Itochu did not make any contribution to the Policy, but because it contributed to some set of benefits, it argues that the Policy cannot be severed from the overall plan. Further, Defendant argues that, even if Itochu did nothing more than collect premiums on the Policy, "it would not negate Itochu International's administration activities of other elements of its Employee Benefits Plan." *Id.* at 6–7.

Regrettably, Defendant's argument begs the question whether the Policy was part of the overall benefits package provided to Itochu employees or whether it was a wholly separate insurance policy with which the company was minimally involved, as Plaintiff claims. A brief comparison reveals a factual distinction between *Armstrong* and the present case. In *Armstrong*, the employer paid for the insurance policy on the employer's life, and the employee had the option of increasing coverage or insuring the lives of his or her dependents. As the Court noted, the additional coverage that the *Armstrong* plaintiff sought to recover could not exist independently of the free life insurance coverage paid for by the plaintiff's

employer. *See Armstrong,* 122 F.Supp.2d at 743.

Unlike the insurance policy that Itochu paid for, which was underwritten by Nippon Life Insurance Company of America, the Policy is underwritten by AIG. This suggests that the AIG-underwritten Policy did not merely provide additional coverage under the same plan paid for in part by Itochu, as was the case in *Armstrong* and *Smith,* but was a completely separate policy not part of the employer-sponsored plan. The AIG Policy includes the following conspicuous, boldface disclaimer on the cover page: THIS IS AN ACCIDENT ONLY POLICY. IT DOES NOT COVER SICKNESS OR DISEASE. By contrast, the coverage at issue in *Armstrong* and *Smith* was additional coverage of the same kind already subsidized by the employer. It is not clear from Defendant's submissions what type of life insurance Itochu subsidized, but without any indication from the Parties, the Court cannot assume that the AIG Policy was merely an outgrowth of the Nippon policy. Nor does Defendant provide any indication that Itochu endorsed the AIG Policy. *Cf. Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991) (holding that a group accidental insurance policy qualified as an ERISA plan where the employer's brochure endorsed the plan by urging employees to "give the program careful consideration"). Rather, the facts show only that Itochu included a brochure for the AIG Policy with the booklet listing the benefits in the package subsidized by the company. Nor is there any indication that claims under the AIG Policy were handled by an administrator employed by Itochu. *Cf. id.* at 974 (finding that the company "employed a full-time 'employee benefits administrator'

who accepted claim forms from ... employees and submitted them to [the insurer]").

Other than the fact that Itochu provided some benefits package to its employees, Defendant provides no indication of how, if at all, the AIG Policy fits into the overall benefits package. Defendant has failed to provide facts to support the crucial link between the AIG Policy and the overall package of health and insurance benefits provided by Itochu. The mere fact that coverage flows from the employment relationship is not sufficient to invoke ERISA. The lack of relevant information regarding Itochu's benefit plan creates significant doubt about the AIG Policy's status as an ERISA plan. Because Defendant bears the burden of proving the existence of an ERISA plan as well as valid subject-matter jurisdiction, and because all doubts concerning removal must be resolved against federal jurisdiction, the Court concludes that the AIG Policy falls within the safe harbor provision and is therefore not an ERISA plan. Lacking jurisdiction, the Court must REMAND to the Texas Court.[2]

### IV.

For the reasons stated above, the Court finds that it lacks subject-matter jurisdiction; therefore, the Court hereby **RE-MANDS** the case to the 239th Judicial District Court of Brazoria County, Texas. Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

**IT IS SO ORDERED**

---

**2.** While an order remanding a case to state court is generally not reviewable, *see* 28 U.S.C. § 1447(d), the Court does not intend by this Order to undermine the parties' rights to a proper appeal. Rather, by remanding this case, the Court hopes to minimize expense and inconvenience to the parties.