Michael LaPREASE, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA d/b/a Unum/Provident,
a Foreign Corporation Defendant.

No. C03–3182Z.

United States District Court,
W.D. Washington,
at Seattle.

Dec. 2, 2004.

Patrick H. Lepley, Lepley & Koehler, Bellevue, WA, for Plaintiff.

D. Michael Reilly, Robert J. Guite, Lane Powell Spears Lubersky, Seattle, WA, for Defendant.

## ORDER

ZILLY, District Judge.

### INTRODUCTION

This case comes before the Court on Defendant Unum Life Insurance Company of America's motion for summary judgment, docket no. 12. The Court, having considered the briefs in support and opposition to the motion, hereby GRANTS Defendant's motion for summary judgment.

### BACKGROUND

The facts of this case are not in dispute and are based entirely on the claim file

submitted by the Defendant, Unum Life Insurance Company of America ("Unum"). This case involves Unum's denial of Plaintiff Michael LaPrease's ("Mr. LaPrease" or "Plaintiff") claim for long-term disability benefits for a back injury.

### The Plan

Mr. LaPrease was the director of sales for NCO Financial Systems, Inc. ("NCO"). UACL 00292. As an NCO employee, Mr. LaPrease had the option of enrolling in NCO's long-term disability plan (the "Plan"), which he elected to do. UACL 00275, 00273–00272. Mr. LaPrease paid a monthly fee for the Plan and NCO did not contribute to the cost of his benefits. UACL 00275. The Plan in which Mr. LaPrease enrolled was issued by Unum to NCO. UACL 00246. It purports to be covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* NCO is listed as the Plan Administrator and the named fiduciary of the Plan, with the authority to delegate its duties. UACL 00217. The Plan states that the Plan Administrator and its designee, Unum, will have the broadest discretion available under ERISA. UACL 00212. The Plan covered the year February 1, 2002 to February 1, 2003. UACL 00244. Coverage for an individual ends on the last day the individual is in active employment, if it has not already ended. UACL 00234.

In order to receive benefits under the Plan, a claimant is required to submit proof of disability. A claimant is disabled when Unum determines that:

- [The claimant is] limited from performing the material and substantial duties of [his or her] regular occupation due to ... sickness or injury; and
- [The claimant has] a 20% or more loss in [his or her] indexed monthly earnings due to the same sickness or injury.

UACL 00232. The claimant must provide proof, among other things, of the cause of the disability, of the extent of the disability, and that he or she is under the regular care of a physician. UACL 00241. "Regular care" is defined in the Plan as "you personally visit a physician as frequently as is medically required ... and you are receiving the most appropriate treatment and care ... for your disabling condition(s) by a physician whose speciality or experience is the most appropriate...." UACL 00209. Unum may also request authorization to obtain additional medical documentation. UACL 00241.

The Plan also details what information must be provided if Unum declines a claim. Under this provision, Unum must:

1) State the specific reason(s) for the determination;

2) Reference specific Plan provision(s) on which the determination is based;

3) Describe additional material or information necessary to complete the claim and why such information is necessary;

4) Describe Plan procedures and time limits for appealing the determination, and [the claimant's] right to obtain information about those procedures and the right to sue in federal court; and

5) Disclose any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination ....

UACL 00215. The Plan also details appeal procedures with similar explanation requirements. UACL 00216.

### Initial Claim and Denial

Mr. LaPrease first injured his back in 1990 while working in the airline industry. UACL 00268. He injured his back two additional times, once when he was crushed between two canisters while working for Federal Express and once when lifting a desk *Id.* In 2000 he underwent a lumbar fusion surgery. UACL 00268. In February of 2002, Mr. LaPrease visited

the Rocky Mountain Spine Clinic complaining of severe back pain. UACL 00248. Mr. LaPrease stopped working in March of 2002. UACL 00285.

As soon as the Plan's elimination period[1] was up, on August 31, 2002, Mr. La-Prease filed a claim for benefits. UACL 00286–00284. Angelika Voelkel, M.D., completeled the Physician's Statement portion of the claim and Mr. LaPrease also submitted a medical report by Yeschiel Kleen, M.D. UACL 00286, UACL 00268–00247. Dr. Voelkel concluded that Mr. LaPrease could not lift more than five pounds, but did not attach any evidence on which this conclusion was based. UACL 00286. Dr. Kleen concluded that Mr. La-Prease was permanently disabled and based this assessment on Mr. LaPrease's medical records, a physical examination, and radiographic studies of Mr. La-Prease's spine. UACL 00267–00265. Dr. Kleen also noted that Mr. LaPrease was taking 300 mg of methadone a day. *Id.*

Upon receipt of Mr. LaPrease's claim, Unum gathered information regarding Mr. LaPrease's medical condition and the demands of his occupation and evaluated his claim. Unum confirmed that Mr. La-Prease's job as director of sales was sedentary in nature. UACL 00369. Unum asked Robert Keller, M.D., a board certified orthopedic surgeon, to review Mr. La-Prease's medical records created by Dr. Voelkel, Dr. Kleen, John Barker, M.D., and Eric Jamrich, M.D. UACL 00379. Dr. Keller reviewed the information and concluded that "there are no objective data to support the 5# wt lift R & L. No functional testing has been performed and the physical examination and imaging studies provide no evidence of an underlying musculoskeletal condition that would preclude lifting of 10 # . The claimant has been on

methadone therapy for a considerable period of time and was able to work while on this treatment. Therefore, if there is ongoing methadone treatment, it would not preclude function at the level of sedentary." *Id.* There is no evidence that any of Mr. LaPrease's physicians had performed functional testing on him at that time.

On November 12, 2004, Unum sent Mr. LaPrease a letter denying his claim. UACL 00353. This letter states that the documentation provided by Mr. LaPrease did not give enough information to support disability through the elimination period. UACL 00352. This determination was based on several factors including: (1) Dr. Voelkel's attending physician statement, which described Mr. LaPrease's restrictions and limitations, did not attach any support for those recommendations; (2) Mr. LaPrease only met with Dr. Kleen once with no follow-up visits scheduled; (3) Mr. LaPrease was not currently under the care of a physician; (4) Mr. LaPrease had submitted no information to indicate that he was still disabled at the end of the elimination period; (5) Mr. LaPrease's job was sedentary, requiring him to lift no more than ten pounds, and no functional testing had been performed to establish that he could only lift five pounds; and (6) as Mr. LaPrease had been on methadone and worked, his methadone treatment should not affect his ability to do his job. *Id.* The denial provided instructions on how to appeal and enclosed a Functional Capacities Evaluation form that Mr. La-Prease could have filled out by a physician if he had new, additional information to report. UACL 00350.

### Appeal

In a letter dated November 11, 2002, Mr. LaPrease appealed Unum's decision to

---

1. The elimination period is a period of continuous disability which must be satisfied before the claimant is eligible to receive benefits from Unum. UACL 00352.

deny his claim UACL 00200. In his appeal, Mr. LaPrease included the Functional Capacities Evaluation form that had been provided to him, filled in by Alex Efrid, M.D. UACL 00169–00164. Dr. Efrid concluded that Mr. LaPrease had zero functional capacity, but did not provide any test or examination results to support this conclusion. *Id.* Dr. Efrid states that he based his conclusion on "the patient's report of symptoms and [a] clinical exam." UACL 00168.

Susan Grover, R.N., C.R.R.N., evaluated all of the medical documentation submitted by Mr. LaPrease. UACL 00162–00159. Nurse Grover stated that the findings from each exam had been inconsistent, with Dr. Barker noting a normal neurological exam, Dr. Jamrich noting weakness in every distribution in Mr. LaPrease's right leg, and Dr. Kleen noting 4/5 strength in his right quad. UACL 00159. Nurse Grover also observed that there was no data supporting decreased function, inability to lift more than five pounds, or inability to perform a sedentary occupation. *Id.* Finally, Nurse Grover noted that it did not appear that Mr. LaPrease was under the regular care of a physician. *Id.*

Brian G. Brock, D.O., reviewed the medical records and Nurse Grover's findings and concurred. UACL 00158. Dr. Brock explained that Dr. Kleen's conclusion that Mr. LaPrease is totally disabled was based on the patient's self reporting and not on physical/neurological testing. *Id.* Dr. Brock noted that there was no evidence of muscle deterioration, despite Mr. LaPrease's reports of weakness. *Id.* Dr. Brock observed that Mr. LaPrease's symptomatology seemed to be based on degenerative joint disease within the lumbar spine, but upon his own review of the available diagnostic imaging there did "not appear to be a significant degree of lumbar degenerative change." *Id.* As Dr. Keller

and Nurse Grover did before him, Dr. Brock asserted that there was no "basis for precluding the Claimant from lifting at least 10 pounds occasionally." *Id.*

Based on the evaluations by Nurse Grover and Dr. Brock and the prior evaluation by Dr. Keller, Unum sent Mr. LaPrease a letter dated December 26, 2002, affirming its denial of his claim. UACL 00157–00155. The letter explains the above findings and states that while Mr. LaPrease had asserted that he is disabled, he had not provided information, as required by the Plan, such that Unum could assess his condition and make certain that he was receiving regular and appropriate care. *Id.*

### Final Appeal

In response to the second denial of his claim, Mr. LaPrease hired an attorney and submitted additional information regarding his health. UACL 00148–00145. Unum gave him an extension of time, until March 15, 2003, to submit additional information. UACL 00315. Mr. LaPrease also filed a complaint with the insurance commissioner. UACL 00322, 00313–00312, 00111–00109. The additional information Mr. LaPrease submitted included the chart notes from his examination by Dr. Efrid, a performance based functional capacities evaluation ("PBFCE") dated February 27, 2003, by Workable Solutions, and medical records from the Denver Spine Center. UACL 00084–00044.

The PBFCE concludes that Mr. LaPrease could perform sedentary job tasks on a part-time basis, could alternately sit, stand, and walk for two hours at a time, or for 3–4 hours in an 8 hour day, and that he would not improve to be able to tolerate working beyond this level. UACL 00083–00081. The PBFCE contains a musculoskeletal evaluation and a range of tests including motion evaluation tests, manual muscle tests, functional tolerances and ma-

neuverability tests, hand dexterity tests, whole body range of motion tests, and maximum dynamic lift/carry/push/pull tests. UACL 00083–00073. The records from the Denver Spine Center document Mr. LaPrease's back pain and recommend medication, but do not make any conclusions about, or test, his ability to work, other than recommending that he stay off work while tests were being performed. UACL 00057.

Nurse Grover reviewed the new information submitted by the claimant and determined that it did not affect her prior findings: the exams continued to be inconsistent, underscored by this new information, there was no "clinical data" to support inability to perform sedentary work, and the PBFCE did not document the specific tests it relied on, so she could not determine its validity. UACL 00037–00036. Dr. Brock again reviewed the medical records and Nurse Grover's findings and concurred. UACL 00035. Dr. Brock stated that the PBFCE did not provide "appropriate coefficients of variation, pulse rate/blood pressure during stated peak pain/effort measurements, or the methodology/measurements for their stated validity testing." *Id.* Additionally, according to Dr. Brock, there was no explanation why the claimant was unable to lift more than five pounds. *Id.*

In a letter dated May 7, 2003, Unum again affirmed its decision to deny Mr. LaPrease's claim. UACL 00034–00032. First, the letter states that the PBFCE was performed nearly a year after Mr. LaPrease last worked and thus does not provide information regarding Mr. LaPrease's health while he was covered by the Plan. This final letter is the first time Unum mentions the coverage period as a reason for denying Mr. LaPrease's claim and earlier letters imply that Mr. LaPrease's continuing condition is relevant. However, the letter goes on to state that even if Unum considered the PBFCE, it would not change Unum's decision because the PBFCE does not support its conclusion that Mr. LaPrease only possesses part-time capacity. *Id.*[2] The letter finally states that Mr. LaPrease has not indicated that he needs nursing home care or in-home assistance. UACL 00033.

After this final review, Mr. LaPrease's attorney reminded Unum that the Social Security Administration had determined that Mr. LaPrease is disabled. UACL 00012. Unum informed Mr. LaPrease's attorney that Mr. LaPrease had exhausted his administrative remedies and they were unable to conduct an additional appeal review. UACL 00014.

## DISCUSSION

### I. Is the Plan governed by ERISA?

■ The Court's first task is to determine whether the Plan is governed by ERISA. Under ERISA, 29 U.S.C. § 1002(1), an "employee welfare benefit plan" or "welfare plan" is:

(1) any plan, fund, or program;

(2) established or maintained;

(3) by an employer or by an employee organization, or by both;

(4) for the purpose of providing, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment;

---

2. It appears that Unum misread the PBFCE in some respects, stating that it indicates that Mr. LaPrease is unable to do any of the activities of daily life and that it implies that Mr. LaPrease can work full-time. The PBFCE does neither. Instead, it states that Mr. LaPrease can do some of the activities of daily life, with discomfort, and that Mr. LaPrease can at most sit/stand/walk alternately for 3–4 hours a day. UACL 00081–00080.

(5) to the participants or their beneficiaries.

29 U.S.C. § 1002(1). Whether a plan is an ERISA plan is a question of fact to be answered by the Court in light of all the surrounding facts and circumstances from the point of view of a reasonable person. *Kanne v. Connecticut Gen. Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988). The Department of Labor has issued regulations exempting certain plans from ERISA governance in a "safe harbor" provision. 29 C.F.R. § 2510.3–1(j). According to these regulations, a group or group-type insurance program offered to employees or members of an employee organization will not be "employee welfare benefit plans" or "welfare plans" if:

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives [no profit from the insurance].

29 C.F.R. § 2510.3–1(j). The Plan must meet all four criteria in order to be exempted. *Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1452 (5th Cir.1991). If an employer is no more than a "mere advertiser" of a plan and makes no contributions on behalf of its employees, then the Plan will not be governed by ERISA. *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir. 1987). However, if the employer participates in any more meaningful way, including simply arranging for the Plan, then ERISA governs. *Id.*

■ Mr. LaPrease argues that the Plan is not governed by ERISA because all four criteria of 29 C.F.R. § 2510.3–1(j) are met. The second and fourth criteria are met as the Plan documents indicate that the Plan is completely voluntary and there is no evidence that NCO received a profit. However, the first criteria is not met as the Plan documents state that under one option for "other full time employees," NCO is responsible for the full cost of the employee's benefit. UACL 00244. While NCO did not pay for Mr. LaPrease's benefits, the Plan documents indicate the possibility that NCO may have paid for other employees' benefits under the Plan. The third criteria is also unfulfilled as the Plan documents state that NCO is the Plan Administrator, NCO retains the right, in its sole discretion, to amend, modify or terminate the Plan, NCO has the right to cancel the policy or a plan under the policy, and NCO, and Unum as its designee, has discretionary power under the Plan. UACL 00217–00212. These actions constitute more than simply collecting premiums through payroll deductions and remitting them to Unum. *See* 29 C.F.R. § 2510.3–1(j). By serving as the Plan Administrator and potentially paying for some employees' benefits, NCO in effect endorsed the Plan. *See Stuart v. UNUM Life Ins. Co. of Am.,* 217 F.3d 1145, 1150–53 (9th Cir.2000); *Kanne,* 867 F.2d at 493. Only two of the four criteria of 29 C.F.R. § 2510.3–1(j) are met and therefore the safe harbor provision does not apply. *Stuart,* 217 F.3d at 1153. Additionally, the Plan satisfies ERISA's statutory criteria, as the Plan is maintained by NCO, the employer, for the purpose of providing disability insurance to the Plan's beneficiaries. *See* 29 U.S.C. § 1002(1). As there are no genuine issues of material fact on this issue, the Court finds that the Plan is governed by

ERISA.[3]

## II. Standard of Review

Before reaching the merits of Mr. La-Prease's claims, the Court must determine the appropriate standard of review of Unum's decision to deny benefits. First, the Court must decide whether NCO granted Unum discretionary authority to determine eligibility. If the administrator or fiduciary has such authority, courts are generally required to review such policies under the abuse of discretion standard. *See Firestone Tire Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (*"Firestone"*) (where an ERISA plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan, the court must apply the deferential "abuse of discretion" standard of review). If the Court determines that Unum had discretionary authority to determine eligibility, it must then determine whether Unum was operating under a conflict of interest to ascertain whether abuse of discretion or de novo review is appropriate. *See id.*

### A. NCO's Grant of Discretionary Authority

■ Mr. LaPrease argues that there are issues of fact and law as to whether NCO, as Plan Administrator, granted discretionary authority to Unum to make claims decisions. Pl.'s Response, docket no. 15, at 15. Mr. LaPrease asserts, without explanation, that the grant of discre-

tionary authority to Unum within the Plan documents themselves is insufficient and that there needs to be an additional letter or writing conferring discretionary authority on Unum. There is no such requirement. The Plan states:

> In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA ... and its decisions will constitute final review of your claim by the Plan. Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

UACL 00212. This language grants the requisite discretionary authority to Unum to determine benefit eligibility. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948.

### B. Conflict of Interest

■ "[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. The Ninth Circuit has interpreted *Firestone* to suggest that when an insurance company administers a plan and simultaneously profits by denial of coverage, there is an apparent conflict of interest. *Regula v. Delta Family–Care Disability Survivorship Plan,* 266 F.3d 1130, 1145 (9th Cir.2001), overruled on oth-

---

**3.** The Plaintiff contends that he may argue that ERISA does not apply and still ground his claim on Unum's failure to properly administer an employee benefit plan and convert the claim into a federal breach of contract case. *See* Pl.'s Response at 15. The Plaintiff cites *Blakeman v. Mead Containers,* 779 F.2d 1146 (6th Cir.1985), to support this contention. *Blakeman* does not help the

Plaintiff as it holds that ERISA preempts state common law contract actions, but does not discuss federal breach of contract claims and their relation to ERISA. *Id.* at 1151. The Plaintiff does not make clear on what he would base federal jurisdiction if ERISA does not apply. Therefore, the Plaintiff's argument fails.

er grounds by *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). However, the presence of an apparent conflict does not automatically heighten the standard of review. *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 943 (9th Cir.1999). Only serious conflicts heighten the scrutiny. *Id.*

To establish a serious conflict, the plaintiff must produce "material, probative evidence ... tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1323 (9th Cir.1995). "The plaintiff must show that the administrator was *in fact* influenced by the conflict of interest." *Armstrong v. Liberty Mut. Life Assurance Co.,* 273 F.Supp.2d 395, 403 (S.D.N.Y.2003) (emphasis in original). "Evidence of 'personal motivations,' 'improper acts,' bias or bad faith are ... sufficient to meet this burden." *Thomas v. Silgan Containers Corp.,* Nos. 98–16691, 98–17007, 2000 WL 536523, *1, 2000 U.S.App. LEXIS 9039, at *5 (9th Cir. May 3, 2000) (unpublished) (citing *Atwood,* 45 F.3d at 1323; *Hensley v. Northwest Permanente P.C. Retirement Plan and Trust,* 5 F.Supp.2d 887, 892 (D.Or.1998)). If the plaintiff satisfies this burden, then the defendant bears the burden of showing the conflict of interest did not affect its decision to deny benefits. *Bendixen,* 185 F.3d at 943. If the defendant fails to meet this burden, the decision to deny benefits is reviewed *de novo. Thomas,* 2000 WL 536523, *1, 2000 U.S.App. Lexis 9039 at *4.

Unum has an "apparent" conflict because it both administers the Plan and serves as the funding source for the benefits. Mr. LaPrease contends that Unum's conflict of interest influenced its decision to deny benefits. Specifically, Mr. LaPrease argues that in making its decision Unum demonstrated a pattern of refusing to follow its own claims and appeal procedures. Pl.'s Response at 20.

■ First, Mr. LaPrease argues that Unum disregarded the conclusions of his doctors and did not support its conclusions with medical evidence when it made its first decision to deny his claim. The evidence demonstrates, however, that Unum did not disregard the conclusions of Mr. LaPrease's doctors. Unum instead relied on the opinion of its reviewing physician, Dr. Keller. Dr. Keller reviewed the information provided by Mr. LaPrease and determined that the medical records did not provide enough information to support the conclusion that Mr. LaPrease could not perform a sedentary occupation. UACL 00379. Mr. LaPrease presents no evidence that Unum disregarded one of its own policies or procedures in making this initial determination. As required in the Plan, Unum's letter states specific reasons for its determination and references the relevant Plan provision, the definition of disability, on which it relied. *See* UACL 00215.

Mr. LaPrease next argues that after he submitted additional information on appeal, specifically the report of Dr. Efrid, Unum denied the claim based on "inconsistencies" without explaining why these inconsistencies were important. Mr. LaPrease also argues that Unum stretched the truth when it stated that it based its first affirmation of its denial on a physician's review of the claimant's file. Mr. LaPrease argues that Nurse Grover first reviewed the information and Dr. Brock merely rubber-stamped it. In its letter denying Mr. LaPrease's claim for the second time, Unum explains that its determination was based on inconsistencies in the record, a lack of findings or test results supporting the opinions of Dr. Voelkel, Dr. Kleen or Dr Efrid, and a finding that the information submitted did not support the

conclusion that Mr. LaPrease could not perform the functions of a sedentary job. UACL 00330–00329. This constitutes a sufficient explanation to support Unum's denial of benefits. Further, while Nurse Grover did initially review the medical information submitted by Mr. LaPrease, Dr. Brock also evaluated this information and provided his own analysis. There is no proof of "rubber-stamping" and no evidence that Unum disregarded its own policies or procedures in making this second determination.

Mr. LaPrease next argues that Unum denied his second appeal because the PBFCE was performed after his coverage period ended and that this was an arbitrary "change in the rules". Unum's third letter of denial is the first time it mentions the coverage date as a reason for denying a claim. However, the Plan clearly states that coverage ends, if it has not ended already, on the last day of active employment. UACL 00234. Additionally, the coverage date is not the only reason that Unum provided as to why it affirmed the denial of Mr. LaPrease's claim. Unum's letter states that the PBFCE does not support its conclusion that Mr. LaPrease was limited to part-time capacity and lacks several key tests. UACL 00026. Finally, the letter concludes that the examination findings submitted by Mr. LaPrease have been inconsistent. UACL 00025. Mr. LaPrease does not present any evidence that Unum disregarded its own policies or procedures.

■ Mr. LaPrease argues that Unum ignored the fact that Mr. LaPrease had been found disabled by the Social Security

Administration. However, Mr. LaPrease has not provided any evidence as to why the Social Security Administration's decision need be taken into account by Unum or any policies Unum had that indicated this decision was relevant. This argument does not demonstrate that Unum disregarded its own policies or procedures.[4]

Finally, Mr. LaPrease argues that this case is analogous to *McLeod v. Hartford Life and Accident Ins. Co.,* 372 F.3d 618 (3d Cir.2004). *McLeod* was decided in the Third Circuit, which uses a "heightened" arbitrary and capricious standard whenever there is an apparent conflict of interest. *Pinto v. Reliance Std. Life Ins. Co.,* 214 F.3d 377, 378 (3d Cir.2000). In contrast, the Ninth Circuit has held that, while the conflict of interest may be taken into account when deciding if there was an abuse of discretion, "the presence of an apparent conflict does not automatically heighten the standard of review." *Bendixen,* 185 F.3d at 943. In addition, *McLeod* considered an insurance company's decision to deny the plaintiff benefits for her multiple sclerosis under a pre-existing condition limitation. Whether the plaintiff was actually disabled was not an issue, unlike the case at bar. Mr. LaPrease has failed to show how *McLeod* is relevant, helpful, or analogous to the present case, other than that both cases involve a substantial amount of medical evidence and insurance company benefit denials.

Mr. LaPrease has failed to come forward with the material, probative evidence required to show that Unum was in fact influenced by a conflict of interest. *Hensley,* 258 F.3d at 995; *Armstrong,* 273

**4.** Even if the Social Security Administration has granted Mr. LaPrease disability benefits, this does not control whether he is covered by the Plan. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 829–34, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (refusing to import

the treating physician rule from the social security context into the ERISA context, citing the critical differences between the mandatory social security disability program and voluntary employee benefit plans).

F.Supp.2d at 403. Mr. LaPrease has not presented evidence tending to show that Unum disregarded its own policies or procedures, acted with bias, bad faith or personal motivation. Based on the foregoing, the Court must conclude as a matter of law that the proper standard of review is abuse of discretion.

### III. Abuse of Discretion

 Under an abuse of discretion standard of review the Court must affirm the decision to deny benefits if the decision was "based upon a reasonable interpretation of the plan's terms and was made in good faith." *Bendixen*, 185 F.3d at 944. ERISA plan administrators abuse their discretion by: (1) rendering decisions without any explanation, (2) construing provisions of the plan in a way that conflicts with the plan's plain language, or (3) by relying on "clearly erroneous findings of fact in making benefit determinations." *Id.; see also Futamura v. Unum Life Ins. Co. of Am.*, 305 F.Supp.2d 1181, 1185 (W.D.Wash.2004). Where there is relevant evidence in the administrative record that reasonable minds might accept as adequate to support a conclusion, even if it is possible to draw two inconsistent conclusions from the evidence, the administrator's decision must be allowed to control. *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1473 (9th Cir.1993); *Billinger v. Bell Atlantic*, 240 F.Supp.2d 274, 282 (S.D.N.Y.2003).[5]

 Under the Plan, Mr. LaPrease would be entitled to benefits if he submitted proof upon which Unum determined that he "is limited from performing the material and substantial duties of [his] reg- ular occupation due to [his] sickness or injury; and [he has] a 20% or more loss in [his] indexed monthly earnings due to the same sickness or injury." UACL 00232. Based on the findings of its consulting physicians, Unum determined that Mr. La-Prease did not meet this definition of disabled. Unum has no obligation to give more weight to the opinions of Mr. La-Prease's treating physicians than to its own physicians, as long as such evidence is credible. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829–34, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); *Gannon v. Met. Life Ins. Co.*, 360 F.3d 211, 214 (1st Cir.2004) (holding that the evidence relied on by the insurer need not include the opinion of an examining physician). Mr. LaPrease has not submitted any evidence that Unum's decision to deny him benefits construed the definition of disability in a way that conflicts with the Plan's plain language or relied on clearly erroneous findings of fact. Unum gathered Mr. La-Prease's medical information, its consulting nurse and physicians evaluated it, and Unum reasonably relied on their evaluation in denying these claims. Unum gave detailed reasons why it denied benefits in three separate letters. Further, Mr. La-Prease did not provide evidence that he was under the regular care of a physician as required by the Plan. UACL 00241.

Finally, Mr. LaPrease argues that the facts of this case are strikingly similar to those in *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118 (9th Cir.1998). In *Zavora*, the plaintiff's physician stated that his disability resulted from a thorn which had become buried in the back of his eye. *Id.* at 1122. The defendant referred the

**5.** The Ninth Circuit has not adopted the "heightened" arbitrary and capricious standard that some other circuits have developed for situations in which there is an apparent conflict of interest. *See Pinto*, 214 F.3d at 378. Instead, the Ninth Circuit has held that the standard of review changes only if there is a serious conflict of interest. *Bendixen*, 185 F.3d at 943; *Atwood*, 45 F.3d at 1322.

plaintiff's claim to its medical personnel, none of who were ophthalmologists. *Id.* at 1122–23. Without examining the plaintiff or conferring with his physician, these medical personnel determined that his disability was caused by a pre-existing dry-eye problem. *Id.* The court held that this determination was an abuse of discretion. *Id.* Mr. LaPrease argues that his case is similar to *Zavora* because the physicians reviewing his medical records determined that because he took methadone while at his job, his use of methadone would not affect his ability to work, the reviewing physicians employed by Unum disagreed with his treating physicians, and Unum ignored additional medical information about his disability and the fact that the Social Security Administration had determined he was disabled. This argument is not persuasive. Mr. LaPrease's physicians never claimed that his methadone use was the cause of his disability, so the fact that Unum's physician's did not either is irrelevant. Further, *Zavora* does not hold that disagreeing with the plaintiff's treating physicians is an abuse of discretion. Instead, it holds that an entirely baseless determination that the treating physician's opinion was incorrect is an abuse of discretion. *Id.* at 1122–23. Further still, Unum did not ignore any medical information that the Plaintiff submitted, but instead reviewed it thoroughly. As noted above, whether the Social Security Administration determined that Mr. LaPrease was disabled has no bearing on whether he is disabled for purposes of the Plan.

Additionally, the key facts in *Zavora* are quite different than those in the case at bar. While the medical personnel in *Zavora* were not ophthalmologists, Dr. Keller is a board certified orthopaedic surgeon, Dr. Brock is a board certified radiologist, and Nurse Grover is a certified rehabilitation registered nurse. *Id.* at 1122; UACL 00379, 00159, 00158. All three specialities

provide insight into Mr. LaPrease's ailments and he does not argue otherwise. Finally, while the medical personnel in *Zavora* disagreed with the plaintiff's physician's opinion as to the cause of injury, the medical personnel in the case at bar did not conclude that Mr. LaPrease's physicians were incorrect, but found that there was not enough evidence to support their conclusion that he was disabled. Mr. La-Prease fails to demonstrate that Unum acted arbitrarily or capriciously in denying his claim for benefits under the Plan.

### CONCLUSION

Mr. LaPrease seeks benefits under an ERISA-regulated plan. The Plan confers discretion on Unum to determine his eligibility for benefits. After an investigation, Unum determined that Mr. LaPrease was not limited from working in his own, sedentary occupation. Mr. LaPrease fails to establish that the Court should review Unum's denial of benefits under a de novo standard rather than for abuse of discretion. Under the abuse of discretion standard, the Court affirms Unum's benefits decision. The Court GRANTS the Defendant's motion for summary judgment, docket no. 12.

IT IS SO ORDERED.